SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
Jeffrey D. Lewin, SBN 68202
Cynthia A. Fissel, SBN 164153
550 West "C" Street, Suite 1500
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372

Attorneys for Defendant Survival Systems USA, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT CASSELL, | Case No. 08 CV 964 H NLS |
| Plaintiff, | **NOTICE OF MOTION OF SURVIVAL SYSTEMS USA, INC. TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT** |
| v. | |
| SURVIVAL SYSTEMS USA, INC., a Connecticut Corporation and DOES 1 - 20, Inclusive, | Date:    July 21, 2008 |
| | Time:    10:30 a.m. |
| | Dept.:    13 |
| Defendants. | Judge:   Hon. Marilyn L. Huff |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on July 21, 2008 at 10:30 a.m. in Courtroom 13 of the

above-entitled court, located at 940 Front Street,, San Diego, California, Defendant Survival

Systems USA, Inc. ("SSUSA") will, and hereby does, move for an order pursuant to Federal Rule of

Civil Procedure 12(b)1, 12(b)(3), 12(b)(6) and 28 U.S.C. §§ 1404 and 1406 to dismiss or transfer

venue of this action to the United States District Court for the District of Connecticut.

The motion will be made on the ground that this action arises from an employment

agreement which Plaintiff agreed would be construed under the laws of the State of Connecticut and

pursuant to which Plaintiff agreed that any disputes would, at the election of SSUSA, be heard in the

1 | federal court of record in the State of Connecticut. Accordingly, this action should be dismissed or

2 | transferred to the District of Connecticut.

3 |     The motion will be based on this notice of motion, the declaration of Maria Hanna and the

4 | exhibit thereto, and the memorandum of points and authorities served and filed concurrently

5 | herewith, on the complaint and other records on file herein, and on such other and further evidence

6 | as may be presented at the hearing of this motion.

7 | Dated:      June 17, 2008               SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                           A Professional Law Corporation
8 |

9 |

                                   By:    /s/ Cynthia A. Fissel
10 |                                        Jeffrey D. Lewin
                                           Cynthia A. Fissel
11 |                                        Attorneys for Defendant
                                           Survival Systems USA, Inc.
12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

NOTICE OF MOTION OF SURVIVAL SYSTEMS USA, INC. TO DISMISS OR TRANSFER VENUE TO THE
DISTRICT OF CONNECTICUT

1 | SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
2 | Jeffrey D. Lewin, SBN 68202
Cynthia A. Fissel, SBN 164153
3 | 550 West "C" Street, Suite 1500
San Diego, California 92101
4 | Telephone: (619) 233-4100
Fax Number: (619) 231-4372
5 |
Attorneys for Defendant Survival Systems USA, Inc.
6 |
7 |
8 | **UNITED STATES DISTRICT COURT**
9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10 | SCOTT CASSELL,                          ) Case No.  08 CV 964 H NLS
11 |                                         ) **MEMORANDUM OF POINTS &**
    |                                         ) **AUTHORITIES IN SUPPORT OF**
12 |             Plaintiff,                   ) **SURVIVAL SYSTEMS USA, INC.'S**
    |                                         ) **MOTION TO DISMISS OR**
13 | v.                                      ) **TRANSFER VENUE TO THE**
    |                                         ) **DISTRICT OF CONNECTICUT**
14 | SURVIVAL SYSTEMS USA, INC., a           )
    | Connecticut Corporation and DOES 1 - 20,)
15 | Inclusive,                              ) Date:      July 21, 2008
    |                                         ) Time:      10:30 a.m.
16 |             Defendants.                  ) Dept.:     13
    |                                         ) Judge:     Hon. Marilyn L. Huff
17 |

18 |

19 |          Defendant Survival Systems USA, Inc. ("SSUSA") respectfully submits this memorandum of

20 | points and authorities in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(1),

21 | 12(b)(3), 12(b)(6) and 28 U.S.C. §§ 1404 and 1406 to dismiss or transfer venue of this action to the

22 | United States District Court for the District of Connecticut.  The action should be dismissed or

23 | transferred because Plaintiff Scott Cassell ("Plaintiff") agreed that any disputes with SSUSA would,

24 | at the election of SSUSA, be heard in the District of Connecticut and in accordance with the laws of

25 | the State of Connecticut.

26 | ///

27 | ///

28 |

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION
TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

**I.**

## INTRODUCTION

Plaintiff claims that he was injured during the course of his employment with SSUSA. He claims that SSUSA violated various duties and obligations it owed to him in connection with his employment. The violations alleged by plaintiff include the failure to maintain a safe workplace, to provide sufficient training, assistance and equipment so as to avoid physical injury on the job, and to secure workers' compensation insurance.

Plaintiff's employment relationship with SSUSA is governed by an employment agreement entered into November 15, 2004, which provides that it "shall be construed by and construed in accordance with the laws of the State of Connecticut." Pursuant to the employment agreement, Plaintiff agreed to "submit to jurisdiction before any state or federal court of record in the State of Connecticut … at [SSUSA's] election."

The forum selection and choice of law provisions in Plaintiff's employment agreement apply to the claims he asserts here. Accordingly, SSUSA is entitled to have this case dismissed or transferred to the District of Connecticut.

**II.**

## STATEMENT OF FACTS

SSUSA, based in Groton, Connecticut, is a relatively small company which specializes in aviation and marine safety and survival training. SSUSA instructs pilots, aircrew and passengers in water survival, aircraft ditching emergency and escape procedures, as well as rescue and sea survival techniques at its commercial facility in Connecticut and at federal installations throughout the United States and in Japan. Survival Systems also provides United States Coast Guard approved open-water sea survival training under all climatic conditions for both aviation and marine interests. SSUSA's sophisticated training center in Connecticut features a 100,000 gallon (30'W x 40'L x 14'D) training tank and the most advanced aircraft ditching simulator in the world, the Modular Egress Training Simulator (METS™). The METS™ demonstrates real-time aircraft immersion and inversion, and features exit-specific technology that replicates more than a dozen types of fixed-wing

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1 | and rotary aircraft. Declaration of Maria Hanna at ¶ 2 ("Hanna Decl.").

2 |       In addition to its facility in Connecticut, SSUSA provides on-site training to clients in
3 | California, Hawaii, North Carolina, Alabama and Okinawa, Japan. SSUSA has approximately 11
4 | full time employees at each location. In order to manage the risks associated with operating its
5 | business, SSUSA requires that its personnel, employees, independent contractors and consultants
6 | sign an employment agreement and agree to resolve disputes or claims relating to their work for
7 | SSUSA in Connecticut courts and pursuant to Connecticut law. In this way, SSUSA can better
8 | control, anticipate and plan for the potential costs of claims that may arise with its numerous
9 | employees, and can avoid litigating in distant forums. Hanna Decl. at ¶ 3.

10 |       From October 2002 to May 2007, SSUSA employed Plaintiff as an instructor of over-water
11 | crash survival at Camp Pendleton, California. Plaintiff's job involved working with dive tanks, air
12 | compressors, dive equipment, storage lockers and sheds and other equipment used by SSUSA
13 | personnel to train marines at a pool in Camp Pendleton. Plaintiff needed to move, retrieve and lift
14 | various pieces of such equipment in order to prepare for the training sessions. Plaintiff had
15 | performed these functions daily, without incident, for approximately two and a half years. Hanna
16 | Decl. ¶ 4.

17 |       Plaintiff claims that on May 23, 2005, he was seriously injured while retrieving and lifting
18 | twin diving tanks while on the job at Camp Pendleton. Shortly after his alleged injury, Plaintiff
19 | notified SSUSA that he was unable to work. SSUSA continued to employ and pay Plaintiff for
20 | almost two years during which time Plaintiff continuously and repeatedly told SSUSA that he was
21 | unable to return to work due to severe and persistent pain resulting from his injury. SSUSA believes
22 | that during that period Plaintiff engaged in a variety of extremely physically demanding work,
23 | including running a professional high wire, trapeze and circus training school in Escondido,
24 | California called Trapeze High, and going on numerous expeditions where he wrestled giant squid in
25 | the Sea of Cortez, which activities he filmed for broadcast on cable television's History Channel.
26 | Hanna Decl. ¶ 5.

27 | / / /

28 |

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION
TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1     The terms and conditions of Plaintiff's at-will employment with SSUSA are set forth in an

2    employment agreement, which contains the following provisions for venue and choice of law:

3         11.4  Governing Law.  This Agreement shall become effective only upon acceptance
          by the Company at the Company's principal place of business.  This Agreement shall
4         be construed by and construed in accordance with the laws of the State of Connecticut
          and without reference to principles or conflicts of law thereof.  Employee agrees to,
5         and hereby does submit to, jurisdiction before any state or federal court of record in
          the State of Connecticut, or in the state or county in which any violation may occur, at
6         the Employer's election.

7    Hanna Decl. ¶ 6 and Exhibit "1."

8         On May 15, 2008, Plaintiff, a citizen of California, commenced an action against SSUSA, a

9    citizen of Connecticut, in the Superior Court for the State of California for the County of San Diego.

10   Plaintiff alleges that SSUSA created a dangerous and unsafe condition and failed to provide

11   adequate training and safety to avoid physical injury to him.  Complaint ¶¶ 8-9.  Plaintiff seeks

12   damages of $1,850,000.  Plaintiff's Statement of Damages.

13        On June 2, 2008, SSUSA removed the case to this court on the basis that the amount in

14   controversy exceeds $75,000, exclusive of costs and interest, and complete diversity of citizenship

15   exists.  SSUSA brings this motion to dismiss or transfer venue on the ground that, pursuant to the

16   employment agreement's forum selection and choice of law provisions, SSUSA is entitled to have

17   this case heard in the District of Connecticut, in accordance with the laws of the State of

18   Connecticut.

19                                          **III.**

20                                       **ARGUMENT**

21   **A.    Plaintiff's Complaint Should be Dismissed and Brought, If at All, in Connecticut, the**

22          **Appropriate Forum for this Dispute**

23        A contractual forum-selection clause is a proper ground for a motion to dismiss for improper

24   venue pursuant to Federal Rule of Civil Procedure Rule 12(b) under several theories.  Under Rule

25   12(b)(3), the most common statutory basis for a motion to dismiss for improper venue, a court may

26   consider evidence outside the pleadings on such a motion.  *Argueta v. Banco Mexicano, S.A.*, 87

27   F.3d 320, 324 (9th Cir. 1996); *Lipcon v. Underwriters at Lloyd's, London*, 148 F. 3d 1285, 1290 (11th

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION
TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1  Cir. 1998). Some courts hold that motions to dismiss based on a forum-selection clause should be

2  brought under Rule 12(b)(6) for failure to state a claim on which relief can be granted. *See Silva v.*

3  *Encyclopedia Britannica, Inc.*, 239 F.3d 385, 387-88 n.3 (1st Cir. 2001). In the Second Circuit,

4  which includes the District of Connecticut, a forum-selection clause was the basis for approval of a

5  Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction in *AVC Nederland B.V. v.*

6  *Atrium Invest. Partnership*, 740 F.2d 148, 152-53 (2d Cir. 1984). The result is no different in cases

7  removed from state court. If the forum-selection clause rendered venue improper in the state court

8  in which the action was filed, venue is also improper in the federal court to which the action has

9  been removed. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72-73 (2d Cir.

10  1998).

11      The forum-selection and choice of law provisions in Plaintiff's employment agreement are

12  clear and broad. Plaintiff expressly agreed that the "Agreement shall be construed by and construed

13  in accordance with the laws of the State of Connecticut and without reference to principles or

14  conflicts of law thereof." Moreover, Plaintiff specifically agreed to "submit to jurisdiction before

15  any state or federal court of record in the State of Connecticut, or in the state or county in which any

16  violation may occur, at [SSUSA's] election." *See* Hanna Decl. Exhibit "1" at page 5.

17      Clearly, the parties agreed that Connecticut law would govern actions arising from SSUSA's

18  employment relationship with Plaintiff. Under California's choice of law analysis, the

19      Law of the state chosen by the parties to govern their contractual rights and duties
        will be applied, ... unless either ... the chosen state has no substantial relationship to
20      the parties or the transaction and there is no other reasonable basis for the parties'
        choice, or ... application of the law of the chosen state would be contrary to a
21      fundamental policy of the ... state of the applicable law in the absence of an effective
        choice of law by the parties.
22

23  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992). *See also Zenon v. R.E. Yeagher*

24  *Management Corp.*, 57 Conn. App. 316, 321, 748 A.2d 900 (2000) (contractual clauses that "require

25  the application of the laws of other states upon breach or dispute are recognized as proper in

26  Connecticut").

27  / / /

28
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION
TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1    Equally clear is that the employment agreement gave SSUSA the right to select the judicial

2    forum for any eventual disputes. The forum-selection clause at issue is enforceable under California

3    or Connecticut law. Under California law, forum-selection clauses are routinely enforced:

4        The modern trend is to enforce mandatory forum selection clauses unless they are
    unfair or unreasonable. ... [I]f there is a mandatory forum selection clause, the test is

5        simply whether the application of the clause is unfair or unreasonable, and the clause
    is usually given effect. Claims that a previously chosen forum is unfair or

6        inconvenient are generally rejected. A court will usually honor a mandatory forum
    selection clause without extensive analysis of factors relating to convenience. Mere

7        inconvenience or additional expense is not the test of unreasonableness of a
    mandatory forum selection clause.

8

9    *Olnick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1293 (2006) (citations and quotations

10   omitted). Connecticut case law is equally clear that the courts will uphold the parties' agreement to

11   submit to the jurisdiction of a particular tribunal. *Phoenix Leasing, Inc. v. Kosinski*, 47 Conn. App.

12   650, 653, 707 A. 2d 314 (1998); *Reiner, Reiner & Bendett, P.C. v. Cadle Co.*, 278 Conn. 92, 101-02,

13   897 A.2d 58 (2006).

14       Here, SSUSA elects to have this case heard in federal court in Connecticut, a jurisdiction in

15   which SSUSA has a substantial relationship and interest in litigating, because that is where SSUSA

16   is headquartered, and Connecticut law is the law by which SSUSA seeks to manage its employment

17   relations with its numerous employees in five states and overseas. A primary reason for forum

18   selection clauses is to protect a party such as SSUSA from having to defend actions in distant forums

19   all over the country and beyond. SSUSA's policy of requiring its employees to agree to submit to

20   the jurisdiction of courts in Connecticut allows SSUSA to manage the risks of operating its business

21   and better predict and reduce litigation cost. SSUSA is not a giant corporation that could easily

22   absorb the cost of litigating in a distant forum. Plaintiff cannot demonstrate that the forum selection

23   and choice of law provisions are unfair or unreasonable; they should be enforced under either

24   California or Connecticut law.

25       By virtue of the employment agreement between the parties, and SSUSA's election to

26   proceed in the District of Connecticut, venue is improper in the Southern District of California.

27   Accordingly, this case should be dismissed on the basis of improper venue. If Plaintiff wishes to

28   pursue his action, he should file in Connecticut.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION
TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

**B.    Alternatively, This Case Should be Transferred to the District of Connecticut**

Under 28 U.S.C. § 1406, a district court shall dismiss a case brought in an improper venue, or if it be in the interest of justice, transfer the case to another district in which it could have been brought.

Moreover, a forum-selection clause may be ground for a transfer motion under 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The existence of a forum-selection clause is a factor that should "figure centrally" in the transfer analysis. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Ordinarily, courts will grant a transfer to the forum specified in an enforceable forum-selection clause. "A party resisting transfer to a forum designated in its contract must demonstrate 'exceptional facts' indicating that transfer would be inappropriate." *Stonehenge, Ltd. v. Garcia*, 989 F. Supp. 539, 540 (S.D.N.Y. 1998); *P&S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors). Notably, the existence of a forum selection clause operates as a waiver of the parties to complain about their *own* inconvenience.

The forum-selection clause in Plaintiff's employment agreement is the most important factor in this Court's transfer analysis. *Stewart*, 487 U.S. at 29-30; *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (9th Cir. 1997) (forum-selection clause "a significant factor that figures centrally in the district court's calculus."). While Plaintiff will likely argue that it would be inconvenient for him to litigate in Connecticut, such argument should be given no weight by this Court, as Plaintiff waived that argument by entering the employment agreement. In addition, this Court should give little or no weight to the convenience of Plaintiff's expert witnesses. *Promuto v. Waste Management, Inc.*, 44 F. Supp. 2d 628, 639-40 (S.D.N.Y. 1999).

As a term of his employment relationship with SSUSA, Plaintiff agreed to submit to the jurisdiction and the laws of Connecticut. By filing this case in California, Plaintiff simply ignored

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1  his contractual obligation.  In the interest of justice and fairness, this action should be transferred to

2  the District of Connecticut.

3                                                    **IV.**

4                                            <u>**CONCLUSION**</u>

5         For all the foregoing reasons, based upon the contractual forum-selection and choice of law

6  provisions in Plaintiff's employment agreement, SSUSA respectfully requests that this court dismiss

7  or transfer this action to the District of Connecticut.

8  Dated:      June 17, 2008                  SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                              A Professional Law Corporation
9

10
                                   By:      */s/ Cynthia A. Fissel*
11                                          Jeffrey D. Lewin
                                            Cynthia A. Fissel
12                                          Attorneys for Defendant
                                            Survival Systems USA, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION
TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1 | SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
2 | Jeffrey D. Lewin, SBN 68202
Cynthia A. Fissel, SBN 164153
3 | 550 West "C" Street, Suite 1500
San Diego, California 92101
4 | Telephone: (619) 233-4100
Fax Number: (619) 231-4372
5 |
Attorneys for Defendant Survival Systems USA, Inc.
6 |
7 |
8 |                      UNITED STATES DISTRICT COURT
9 |                   SOUTHERN DISTRICT OF CALIFORNIA
10 |                                          ) Case No. 08 CV 964 H NLS
SCOTT CASSELL,                            )
11 |                                          ) **DECLARATION OF MARIA C.**
                                          ) **HANNA IN SUPPORT OF**
12 |         Plaintiff,                      ) **SURVIVAL SYSTEMS USA, INC.'S**
                                          ) **MOTION TO DISMISS OR**
13 | v.                                       ) **TRANSFER VENUE TO THE**
                                          ) **DISTRICT OF CONNECTICUT**
14 | SURVIVAL SYSTEMS USA, INC., a            )
Connecticut Corporation and DOES 1 - 20,  )
15 | Inclusive,                               ) Date:      July 21, 2008
                                          ) Time:      10:30 a.m.
16 |         Defendants.                     ) Dept.:     13
                                          ) Judge:     Hon. Marilyn L. Huff
17 |
18 |        I, Maria C. Hanna, declare:
19 |        1.     I am President of Defendant Survival Systems USA, Inc. ("SSUSA"). I have
20 | personal knowledge of the facts set forth in this declaration, except as to those matters stated upon
21 | information and belief, which facts I believe to be true. If called upon as a witness I would be
22 | competent to testify to the following facts.
23 |        2.     SSUSA, based in Groton, Connecticut, is a relatively small company which
24 | specializes in aviation and marine safety and survival training. SSUSA instructs pilots, aircrew and
25 | passengers in water survival, aircraft ditching emergency and escape procedures, as well as rescue
26 | and sea survival techniques at its commercial facility in Connecticut and at federal installations
27 | throughout the United States and in Japan. Survival Systems also provides United States Coast
28 |

::ODMA\PCDOCS\PCDOCS\285317\1                    1                    Case No. 08 CV 964 H NLS.

DECLARATION OF MARIA C. HANNA IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION TO
DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1 | Guard approved open-water sea survival training under all climatic conditions for both aviation and
2 | marine interests. SSUSA's sophisticated training center in Connecticut features a 100,000 gallon
3 | (30'W x 40'L x 14'D) training tank and the most advanced aircraft ditching simulator in the world,
4 | the Modular Egress Training Simulator (METS™). The METS™ demonstrates real-time aircraft
5 | immersion and inversion, and features exit-specific technology that replicates more than a dozen
6 | types of fixed-wing and rotary aircraft.

7 |       3.     In addition to its facility in Connecticut, SSUSA provides on site training to clients in
8 | California, Hawaii, North Carolina, Alabama and Okinawa, Japan. SSUSA has approximately 11
9 | full time employees at each location. In order to manage the risks associated with operating its
10 | business, SSUSA requires that its personnel, employees, independent contractors and consultants
11 | sign an employment agreement and agree to resolve disputes or claims relating to their work for
12 | SSUSA in Connecticut courts and pursuant to Connecticut law. In this way, SSUSA can better
13 | control, anticipate and plan for the potential costs of claims that may arise with its numerous
14 | employees, and can avoid litigating in distant forums.

15 |       4.     From October 2002 to May 2007, SSUSA employed Plaintiff as an instructor of over-
16 | water crash survival at Camp Pendleton, California. Plaintiff's job involved working with dive
17 | tanks, air compressors, dive equipment, storage lockers and sheds and other equipment used by
18 | SSUSA personnel to train marines at a pool in Camp Pendleton. Plaintiff needed to move, retrieve
19 | and lift various pieces of such equipment in order to prepare for the training sessions. Plaintiff had
20 | performed these functions daily, without incident, for approximately two and a half years.

21 |       5.     Plaintiff claims that on May 23, 2005, he was seriously injured while retrieving and
22 | lifting twin diving tanks while on the job at Camp Pendleton. Shortly after his alleged injury,
23 | Plaintiff notified SSUSA that he was unable to work. SSUSA continued to employ and pay Plaintiff
24 | for almost two years during which time Plaintiff continuously and repeatedly told SSUSA that he
25 | was unable to return to work due to severe and persistent pain resulting from his injury. SSUSA
26 | believes that during that period Plaintiff engaged in a variety of extremely physically demanding
27 | work, including running a professional high wire, trapeze and circus training school in Escondido,

28 |

DECLARATION OF MARIA C. HANNA IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION TO
DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

1  California called Trapeze High, and going on numerous expeditions where he wrestled giant squid in

2  the Sea of Cortez, which activities he filmed for broadcast on cable television's History Channel.

3      6.    The terms and conditions of Plaintiff's at-will employment with SSUSA are set forth

4  in an employment agreement, which contains the following provisions for venue and choice of law:

5      11.4  <u>Governing Law</u>.  This Agreement shall become effective only upon acceptance
    by the Company at the Company's principal place of business.  This Agreement shall

6      be construed by and construed in accordance with the laws of the State of Connecticut
    and without reference to principles or conflicts of law thereof.  Employee agrees to,

7      and hereby does submit to, jurisdiction before any state or federal court of record in
    the State of Connecticut, or in the state or county in which any violation may occur, at

8      the Employer's election.

9  A true and correct copy of Plaintiff's Employment Agreement is attached hereto as Exhibit "1."

10      I declare under penalty of perjury under the laws of the United States and the state of

11  Connecticut that the foregoing matters are true and correct and that this declaration was executed on

12  June 17, 2008 at Groton, Connecticut.

13

14                            Maria C. Hanna

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARIA C. HANNA IN SUPPORT OF SURVIVAL SYSTEMS USA, INC.'S MOTION TO
DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT

EXHIBIT 1

# EMPLOYMENT AGREEMENT

# SURVIVAL SYSTEMS USA, INC.

THIS EMPLOYMENT AGREEMENT ("Agreement") is made and entered into as of the 15th day of November 2004, by and between SURVIVAL SYSTEMS USA, INC., a corporation (the "Company" or "Employer"), and the undersigned ___Scott Cassell___ ("Employee").

## W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲

WHEREAS, the Company is engaged in the business of providing survival training and instruction services to various private and governmental agencies and/or entities; and

WHEREAS, the Company desires to employ Employee as an at-will employee, and Employee desires to be so employed by the Company, subject to the terms and conditions contained herein;

NOW, THEREFORE, in consideration of the promises herein contained, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### Section 1.    Employment

**1.1**    <u>Duties</u>. During the term of the Employee's employment with the Company, Employee shall serve the Company in the position of ___Instructor___; with such duties as may be established by the Company from time to time in its sole discretion, including, but not limited to, performing the duties and obligations set forth on <u>Exhibit A</u> attached hereto and incorporated herein for all purposes. The Company reserves the right to change your job duties and to implement revised policies and/or procedures with respect to your employment from time to time in its sole discretion.

Employee shall report to, and Employee's activities shall be subject to the direction of, _ Site Manager, Camp Pendleton_, or such other officers or supervisors of the Company as it may designate from time to time. Employees shall comply at all times with all federal, state and local laws and regulations as well as the policies and regulations of the Company in effect from time to time.

**1.2**    <u>Full Attention and Loyalty to the Company</u>. Employee shall serve the Company faithfully and to the best of his or her ability. Employee shall use his or her best efforts to administer and execute the policies and regulations of the Company. Employee shall devote Employee's full time, attention and energy to the business and affairs of the Company, and shall use Employee's best efforts to promote the interests of the Company. While employed by the Company, Employee shall not, directly or indirectly, render any services of a business, commercial or professional nature to any other entity or person, whether for compensation or

SSUSA00177

otherwise. Employee hereto accepts such employment and agrees faithfully to perform such duties and render such services for the term of the Agreement.

      1.3    Authority of Employee. Employee shall not have authority to enter into any agreement on behalf of the Company without the prior written approval of the Company. The Company hereby reserves the exclusive and absolute right to accept or reject any client of the Company and to establish the terms and condition of such client, including, without limitation, the type and manner of services to be provided by the Company and the payment terms thereof.

### Section 2.    Employment at Will.

      This Agreement is not a contract of employment for a definite term. The Employee is an employee-at-will. The Company or the Employee may terminate the employment relationship at any time, for any reason or no reason at all.

### Section 3.    Compensation

      In consideration of the Employee's employment with the Company, the Company shall pay to Employee the compensation and other reimbursements and bonuses, if any, as set forth in Exhibit B attached hereto and incorporated herein for all purposes.

### Section 4.    Benefits

      Employee shall be entitled to participate in all Employee benefit plans and programs made available to other employees of the Company employed in a similar position, as the same may be amended from time to time, and other benefit plans that the Company may from time to time adopt and make available to employees of the Company employed in a similar position, so long as the Company maintains such benefits. All such benefits are subject to the policies and procedures established by the Company from time and time and at its sole discretion. Subject to the foregoing rights of the Company to amend or discontinue any benefits at any time, Employee shall be initially entitled to the benefits, if any, set forth on Exhibit C attached hereto and incorporated herein for all purposes.

### Section 5.    Termination

      5.1    At Will Employment. Employment with the Employer is considered at-will, and this Agreement may be terminated by Employer for any reason and without cause upon written notice to Employee.

      Notwithstanding the above, this Agreement shall terminate on the Employee's death. Employer may also terminate this Agreement if, as a result of Employee's incapacity due to physical or mental illness, the Employee shall have utilized all leave available pursuant to Employer's family and medical leave policy and Employee does not return to work. Nothing in this paragraph is intended to limit or expand any rights provided by applicable federal, state or local law.

SSUSA00178

5.2.    Compensation upon Termination. Upon termination of Employee's employment with the Company as provided herein, Employee shall continue to be paid compensation and to be reimbursed for all necessary and reasonable expenses incurred by Employee pursuant to the provisions herein only to the effective date of such termination; provided, however, that Employee shall continue to fully perform Employee's obligations to the Company through the effective date of such termination.

5.3.    Return of Materials. Upon the termination of this Agreement for any reason whatsoever, all documents, records, electronic data, computers, notes, memoranda, files, notebooks, equipment and other materials which refer or relate to any aspect of the business of Employer and/or which are owned by the Employer which are in the possession of Employee, including all copies thereof, shall be promptly returned to Employer, but not later than fourteen (14) days after termination of this Agreement. Employee agrees that he/she shall not retain, reproduce or distribute these materials or copies thereof. Employee shall be responsible to the Company for all damages, direct or indirect, to the Company caused by any failure of Employee to properly return all such material, and the Company shall not be obligated to make any further payments to Employee of any kind whatsoever until all Company materials described herein or requested to be returned have been returned to the Company. The provisions of this section shall survive the termination of this Agreement.

### Section 6.    Employee Covenants

Employee hereby acknowledges and agrees that Employee's employment with the Company is subject to and conditional upon Employee entering into a confidentiality and non-competition agreement with the Company (the "Confidentiality and Non-Competition Agreement"), substantially in the form of Exhibit E attached hereto and, when so executed by Employee, the terms and conditions of such Confidentiality and Non-Competition Agreement shall be incorporated herein for all purposes. The Confidentiality and Non-Competition Agreement shall survive the termination of this Agreement and shall be deemed to have independent legal significance.

### Section 7.    Nonsolicitation

7.1    During the term of this Agreement and until six (6) months after the termination of this Agreement, Employee shall not, directly or indirectly, take any action which constitutes an interference with or disruption of any of the business activities of Employer, including, without limitation, the solicitation of Employer's employees.

7.2    For purposes of clarification, but not limitation, Employee hereby acknowledges and agrees that the provisions of subparagraph (a) above shall serve as a prohibition against Employee, during the period referred to therein, directly or indirectly, hiring, offering to hire, enticing, soliciting, or in any other manner persuading or attempting to persuade any officer, employee, agent, customer or client of Employer to discontinue or alter his or her or its relationship with Employer.

3

SSUSA00179

### Section 8.    Company Good Will

Employee acknowledges that the Employer has generated a substantial amount of Company good will and, particularly, with its customers, clients and business associates, which good will constitutes an invaluable asset of the Employer (referred to for the purposes of this paragraph as "Good Will"). Employee acknowledges that as an employee of Employer, Employee may be provided access to customers, clients and business associates of the Employer and will be expected to maintain and continue to develop Good Will with such customers, clients and business associates, and with new customers, clients and business associates on behalf of the Company. Employee acknowledges and agrees that he/she shall take no actions or engage in any conduct which is detrimental or adverse to the Company's good will with its customers, clients and business associates.

### Section 9.    Employee Representations

9.1    Employee represents and warrants that he or she is free to enter into this Agreement and is not subject to any restrictions or agreements which would or might interfere with Employee's obligations hereunder. Employee further represents that he or she has ideas, information and knowledge relating to the type of business conducted by Employer, and the Employee's disclosure of such ideas, information and knowledge to Employer will not conflict with or violate the rights of any third party or parties. Employee will not disclose to Employer or use in the performance of his or her duties hereunder any confidential or proprietary information of any third party.

9.2    Employee agrees to indemnify and hold harmless the Employer, its agents and employees from and against any and all liabilities, expenses, claims, penalties, interest or other damage arising from or in connection with the Employee's disclosure or use of any confidential or proprietary information of any third party, or the Employee's conduct, including the use of disclosure of confidential or proprietary information, which violates any third party's rights under any agreement between the third party and the Employee.

### Section 10.    Arbitration

With the exception of disputes arising under the Confidentiality and Non-Competition Agreement, the parties agree to submit every dispute, claim or controversy arising out of this Agreement or employment with the Company to binding arbitration. Employee understands that such disputes may include, but are not limited to, those for payment of wages or compensation, a breach of this Agreement, or employment discrimination. In agreeing to binding arbitration to resolve all such disputes, claims or controversies, Employee understands that he or she may be waiving certain statutory rights and remedies otherwise available to employees, such as the right to a trial by jury. In the event of a dispute, the parties will choose an arbitrator by mutual agreement. If the parties cannot agree upon an arbitrator, an arbitrator will be chosen pursuant to the employment rules of the American Arbitration Association then in effect. Having read this Section 10 carefully, Employee voluntarily agrees to its terms by signing this Agreement. Employee also acknowledges and understands that the Company's right to seek relief pursuant to the Confidentiality and Non-Competition Agreement,

4

SSUSA00180

and Sections 5.3 and 7 of this Agreement, including, but not limited to, the filing for injunctive relief in a court of competent jurisdiction, is not affected by this Section 10.

## Section 11.    Miscellaneous

11.1.    <u>Binding Effect on Successors and Assigns</u>. This Agreement shall bind and enure to the benefit of and be enforceable by the parties hereto and their respective heirs, personal representatives, successors and assigns. Employee shall not assign, pledge or hypothecate Employee's rights, nor delegate Employee's obligations under this Agreement to any person or entity, by operation of law or otherwise, without the prior written consent of the Company. The Company may assign this Agreement and all or any part of the Company's rights and obligations hereunder to any successor in interest to the Company, or to any person or entity which requires all or substantially all of the assets of the Company without the prior consent of Employee. This Agreement is not intended to confer upon any person not a party hereto any rights or remedies hereunder unless such person is a permitted successor to or assignee of a party hereto.

11.2.    <u>Headings</u>. Titles or headings contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement. Such headings in no way define, limit, extend or describe the scope of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.

11.3    <u>Waiver</u>. Neither the failure nor any delay on the part of any party hereto in exercising any right, power or remedy hereunder shall operate as a waiver thereof, or of any other right, power or remedy, nor preclude any further or other exercise thereof, or the exercise of any other right, power or remedy, unless such waiver shall be in writing and signed by the party claiming to have given or consented thereto.

11.4    <u>Governing Law</u>. This Agreement shall become effective only upon acceptance by the Company at the Company's principal place of business. This Agreement shall be construed by and construed in accordance with the laws of the State of Connecticut and without reference to principles or conflicts of law thereof. Employee agrees to, and hereby does submit to, jurisdiction before any state or federal court of record in the State of Connecticut, or in the state or county in which any violation may occur, at the Employer's election.

11.5    <u>Entire Agreement</u>. Except for the Confidentiality and Non-Competition Agreement entered into by the parties, this Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof, and shall not be modified or amended except by an instrument in writing signed by the parties hereto.

11.6    <u>Severability</u>. If any term or condition of this Agreement shall be found to be invalid or unenforceable, in any respect, such invalidity or unenforceability shall not affect any other term or condition of this Agreement, but this Agreement shall be construed as if such invalid or unenforceable term or condition were not contained herein. The remaining provisions of this Agreement shall be enforceable to the fullest extent permitted under applicable law.

5

SSUSA00181

11.7 <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

11.8 <u>Gender, Etc.</u> In the case of all terms used in this Agreement, the singular shall include the plural, and the masculine gender shall include the feminine and neuter and vice versa, as the context requires.

11.9 <u>Notices</u>. All notices, demands or other communications required or desired to be given hereunder by any party shall be set forth in writing and shall be validly given or made to the other party if served personally; or, if mailed, postage prepaid by the United States mail, certified mail, return receipt requested; or by a recognized overnight delivery service. If such notice, demand or other communication is served personally, service shall be conclusively deemed effected at the time of such personal service. If such notice, demand or other communication is given by mail, such service shall be conclusively deemed given 72 hours after the deposit thereof in the United States mail or with the delivery service. Each such notice, demand or communication shall be delivered or addressed to:

If to the Company:

Survival Systems USA, Inc.
Richard E. McInnis
President
144 Tower Avenue
Groton, CT 06340

If to the Employee:

Scott Cassell
11372 Weatherby Road
Los Alamitos CA 90720
[address]

Any party hereto may change its address for the purposes of receiving notices, demands and other communications as herein provided by delivering written notice thereof in the manner aforesaid to the other party hereto.

11.10 <u>Capitalized Terms</u>. All capitalized terms used in the Confidentiality and Non-Competition Agreement, or in any exhibit to this Agreement and not otherwise defined therein, shall have their respective meanings given to such terms in this Agreement.

11.11 <u>Fees</u>.

(a)    The fees pertaining to any arbitration under this Agreement, including the American Arbitration Association's administrative fees and the arbitrator's fee, shall be split equally between the parties. In the event of any arbitration proceedings between the parties hereto with regard to the subject matter hereof, the parties shall bear their own attorneys' fees.

6

SSUSA00182

(b)      Should Employee fail and/or refuse to perform his or her obligations, covenants or promises contained in the Confidentiality and Non-Competition Agreement, or Sections 5.3 and 7 of this Agreement, and it becomes necessary for the Employer to initiate legal or equitable action in a court of competent jurisdiction to enforce the provisions of the aforementioned Agreement or Sections and the Employer prevails in any such action, Employee agrees to pay and indemnify Employer for any and all costs, including reasonable attorneys' fees, incurred by the Employer to enforce the provisions of the Confidentiality and Non-Competition Agreement or Sections 5.3 and 7 of this Agreement, including, but not limited to, the initiation and prosecution of legal or equitable causes of action in a court of competent jurisdiction.

(c)      Employee acknowledges that any action by Employee in violation of his or her obligations, agreements and covenants contained in the Confidentiality and Non-Competition Agreement as well as Sections 5.3 and 7 of this Agreement, shall cause the Employer irreparable injury and damages for which monetary damages may not be sufficient.

**11.12**  Employee acknowledges that he or she has had an opportunity to review this Agreement and to consult with an attorney of his or her choice regarding the provisions of this Agreement and their meaning and impact.

**IN WITNESS WHEREOF,** the undersigned have duly executed this Agreement as of the date first above written.

COMPANY:

SURVIVAL SYSTEMS USA, INC.

By: _____
Name: _Richard E. McInnis_
Title: _President_
Date: _____

EMPLOYEE:

_____
Date: _3 Dec 04_

690757_1/

7

SSUSA00183

<u>Exhibit A</u>

<u>Duties of Employee</u>

Scott Cassell is being hired as an Instructor for the Marine Overwater Crash Survival
facility at Camp Pendleton, CA. This is a full time (+/- 40 hour week), salaried position.
The work environment will be office, classroom, simulator, pool, helicopter, amphibious
vehicle, and open water. There are possible deployments as well. The job is physically and
mentally demanding. It is the employee's responsibility to maintain and improve his
professional status.

<u>Major Duties</u>
Instruction (Theory)
Instruction (Practical)
Administration for courses
Set up of equipment for courses
Reading, self-education, research
Maintain Training Standards

You will be trained as a fully certified Instructor.

Student Safety will be your personal responsibility.

The "Vision and Values" policy will be adhered to at all times.

Initial and Date _SC_
3DEC04

Exhibit B

Compensation

Annual Compensation     $46,502.56

Exhibit C

Employee Benefits

Employee benefits are outlined in the employee handbook. These benefits will include Medical and Dental.

Vacation will be 10 days a year, awarded on a first request first receive basis. Conflicts that can not be resolved will be resolved by date of seniority.  Refer to the handbook for details.

Sick days will be given on a need basis. Refer to the handbook for details.

Exhibit D

Performance Standards

Employees will be evaluated every 6 months by their immediate superior. The evaluation will be conducted in the approved Survival Systems IBA format. Memos of exemplary performance or disciplinary problems may be entered into the employees file at anytime.

Exhibit E

Confidentiality and Non-Competition Agreement

All employees will sign and comply with the confidentiality agreement.

636932_1/2074-1

2

Initial and Date 3 Dec 04

SSUSA00185

1  SULLIVAN, HILL, LEWIN, REZ & ENGEL
   A Professional Law Corporation
2  Jeffrey D. Lewin, SBN 68202
   Cynthia A. Fissel, SBN 164153
3  550 West "C" Street, Suite 1500
   San Diego, California 92101
4  Telephone: (619) 233-4100
   Fax Number: (619) 231-4372
5
   Attorneys for Defendant Survival Systems USA, Inc.
6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10                                        )   Case No.
   SCOTT CASSELL,                         )
11                                        )   **PROOF OF SERVICE**
                                          )
12              Plaintiff,                )
                                          )
13  v.                                    )
                                          )
14  SURVIVAL SYSTEMS USA, INC., a         )
    Connecticut Corporation and DOES 1 - 20, )
15  Inclusive,                            )
                                          )
16              Defendants.               )
                                          )
17

18       I am employed in the City and County of San Diego by the law firm of Sullivan Hill Lewin

19  Rez & Engel, 550 West C Street, Suite 1500, San Diego, California 92101.  I am over the age of 18

20  and not a party to this action.

21       On June 17, 2008, I served the attached document(s):

22       **(1) NOTICE OF MOTION OF SURVIVAL SYSTEMS USA., INC. TO
         DISMISS OR TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT;**
23       **(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
         MOTION TO DISMISS OR TRANSFER VENUE TO THE DISTRICT OF
24       CONNECTICUT; (3) DECLARATION OF MARIA C. HANNA IN SUPPORT
         OF SURVIVAL SYSTEMS USA, INC.'S MOTION TO DISMISS OR
25       TRANSFER VENUE TO DISTRICT OF CONNECTICUT**

26  on the parties, through their attorneys of record, by placing copies thereof in sealed envelopes

27  (except for facsimile transmission), addressed as shown below, for service as designated below:

28

::ODMA\PCDOCS\PCDOCS\284643\2                    1                              Case No.
                                    **PROOF OF SERVICE**

A.    **BY U.S. MAIL.** I am readily familiar with Sullivan, Hill, Lewin, Rez & Engel's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

B.    **BY FACSIMILE** machine pursuant to Rule 2008(e). The recipient's name and fax number that I used are as shown below. The facsimile machine that I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), a transmission report was properly issued by the transmitting facsimile machine.

C.    **OVERNITE EXPRESS.** I caused such envelopes to be deposited in the Overnite Express Drop Box at San Diego, California.

I am personally and readily familiar with the business practice of this office for collection and processing correspondence for Overnite Express mailing. Under that practice it would be dropped in the drop box for the Overnite Express Service on that same day at San Diego, California in the ordinary course of business.

D.    **FEDERAL EXPRESS.** I caused such envelopes to be deposited in the Federal Express Drop Box at San Diego, California.

I am personally and readily familiar with the business practice of this office for collection and processing correspondence for Federal Express mailing. Under that practice it would be dropped in the drop box for the Federal Express Service on that same day at San Diego, California in the ordinary course of business.

E.    **BY PERSONAL SERVICE.** I delivered such envelope by hand to the offices of the addressee.

| SERVICE | ADDRESSEE | PARTY |
|---------|-----------|-------|
| A | Steven Brian Davis<br>Law Offices of Steven Brian Davis<br>12396 World Trade Drive, Suite 115<br>San Diego, CA  92128<br>Telephone:  (858) 451-1004 | Plaintiff Scott Cassell |

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on June 17, 2008 at San Diego, California.

Sandi C. Garcia